# EXHIBIT 1

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: _____

MUSTAFA AL-KHALED, INDIVIDUALLY
AND ON BEHALF OF █REDACTED█,
A MINOR

        Plaintiff,

v.

WANABANA LLC,

        Defendants.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Mustafa Al-Khaled, individually and on behalf of █REDACTED█ ("AA"), a

minor brings this action against Defendant WanaBana LLC and alleges:

### **PARTIES**

1.    Plaintiff Mustafa Al-Khaled is an adult and resident of citizen of Norfolk, Madison

County, Nebraska.

2.    Defendant WanaBana LLC (hereinafter "WanaBana") is a limited liability company

organized and existing under the laws of Florida, transacting business in the State of Florida, with

its principal place of business located in Miami Shores, Florida. It may be served through its

registered agent, Barry Perl, CPA, 9405 North Miami Avenue, Miami Shores, Florida 33150.

### **JURISDICTION AND VENUE**

3.    Jurisdiction is proper in Circuit Court, pursuant to Fla. Stat. §§ 26.012(2)(a) and

34.01(1)(c), because the amount in controversy exclusive of attorney's fees exceeds $50,000.

4.    Venue is proper in Miami-Dade County under Florida Stat. § 47.011.

## GENERAL ALLEGATIONS

### *Lead Poisoning*

5.    Lead is toxic to humans and can affect people of any age or health status. Protecting children from exposure to lead is particularly important because they are more susceptible to lead toxicity. While many children have no obvious immediate symptoms, others will experience headaches, abdominal pain/colic, vomiting, and anemia. Longer term exposure can result in the following additional symptoms, including irritability, lethargy, fatigue, muscle aches or muscle prickling and burning, constipation, difficulty concentrating, muscular weakness, tremors, and weight loss.

### *WanaBana Apple Sauce Lead Outbreak*

6.    On November 3, 2023, the U.S, Food and Drug Administration (FDA) began an investigation into a number of significant lead poisoning cases among children.  By November 16th, the FDA, along with Centers for Disease Control and Prevention (CDC) and state and local partners, was investigating reports of elevated blood lead levels in individuals with reported exposure to Apple Cinnamon Fruit Puree pouches manufactured in Ecuador and sold under WanaBana, Weis, and Schnucks brands.

7.    As of November 16, 2023, there have been 34 reports of illness potentially linked to recalled product submitted to the FDA. The FDA is continuing to evaluate incoming adverse reports of illnesses.

8.    The FDA and other state partners collected and analyzed additional product samples of fruit puree and applesauce pouches. The FDA detected elevated levels of lead in one finished product sample of WanaBana Apple Cinnamon Puree collected from Dollar Tree. The level detected in the FDA sample of WanaBana Apple Cinnamon Puree is 2.18 parts per million (ppm),

which, for context, is more than 200 times greater than the action level the FDA has proposed in draft guidance for fruit purees and similar products intended for babies and young children.

9.    The FDA's has established that the cinnamon used in these recalled pouches is the likely source of contamination for these products; however, the FDA has not yet been able to collect and test samples of the cinnamon used in the recalled products. The FDA is continuing to work with Ecuadorian authorities to investigate the source of the cinnamon. At this time, the FDA has no indication that this issue extends beyond these recalled products, but to further protect public health, the FDA is screening incoming shipments of cinnamon from multiple countries for lead contamination.

10.    In addition to determining the source of cinnamon, the FDA's investigation is ongoing to determine the point of contamination and whether additional products are linked to illnesses. At this time, the FDA is not aware of any other reports of illnesses or elevated blood lead level adverse events reported for other cinnamon-containing products or cinnamon.

11.    The FDA reminded those companies, like Defendant, in this industry that it is the legal responsibility of companies distributing food products that are sold in the U.S. to comply with applicable requirements in the Federal Food, Drug, and Cosmetic Act and FDA's regulations. The FDA stated that, by law, food manufacturers have a responsibility to significantly minimize or prevent chemical hazards when needed. This includes putting in place any needed preventive controls to reduce or eliminate the presence of lead in their products. Most food manufacturers and processors are covered by the preventive control provisions of the Current Good Manufacturing Practice, Hazard Analysis, and Risk-Based Preventive Controls for Human Food rule.

12.    The FDA also stated that the preventive control provisions require industry to implement controls to significantly minimize or prevent any identified chemical hazards, such as

lead, requiring a control. In addition, some manufacturers may conduct verification activities like testing the final product.

**Plaintiff's Illness**

13.   On August 2023, Plaintiff's parents purchased WanaBana Applesauce packages from their local Walmart in Norfolk, NE 68701 and/or Dollar Tree in Norfolk, NE 68701.

14.   Plaintiff's son, a 17-month-old child ("AA"), continued eating the lead contaminated apple sauce pouches from August through late September 2023.

15.   In early October 2023, AA's parents began to note some alarming changes in their child's demeanor and health conditions.

16.   Notably, AA was losing weight at an alarming rate, would cry uncontrollably, and on multiple occasions passed white stool.

17.   On November 8th, AA's parents were incredibly worried about their child's condition and decided to take him to his PCP in Fountain Point Medical Center, 3901 W. Norfolk Ave., Norfolk, NE 68701.

18.   AA's PCP performed a thorough evaluation and noticed the strange symptoms, and decided they necessitated further laboratory work.

19.   After the blood work was returned, AA's PCP notified his parents that the results showed lead elevated in his blood at 15.3 micrograms per deciliter.

20.   AA's parents were advised to continue monitoring his symptoms as there was no medication that could be prescribed for reversing lead poisoning.

21.   AA's father was contacted by the Elkhorn Logan Valley Health Department a few days after being informed of his child's extremely elevated lead poisoning. They informed him of the WanaBana apple sauce recall.

22.   AA's parents submitted some of the apple sauce pouches to the Elkhorn Logan Valley Health Department in mid-November.

23.   AA is still being monitored and continues to undergo regular bloodwork monitoring the lead level in his blood.

## COUNT I

### STRICT LIABILITY

24.   Plaintiff restates and realleges paragraphs 1-23 as if fully restated herein.

25.   At all times, Defendant was in the business of producing, manufacturing, preparing, marketing, and/or serving food (hereinafter "the product") to the public.

26.   There was a manufacturing defect in the product when it left Defendant's possession and control. The product was defective because it contained *lead*. The presence of *lead* was a condition of the product that rendered it unreasonably dangerous.

27.   There was a marketing defect in the product when it left Defendant's possession and control. The product was defective because it contained *lead* and Defendant failed to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known.  Defendant also failed to give adequate warnings and instructions to avoid such dangers.  Defendant's failure to provide such warnings and instructions rendered the product unreasonably dangerous.

28.   The product reached the Plaintiff without substantial change in condition in which the product was sold.

29.   Defendant's conduct and the defective product was a direct, proximate, and producing cause of Plaintiff's injuries and damages set forth in paragraphs 46-48 set forth below.

30.   Defendant is ttherefore strictly liable for importing, manufacturing, distributing,

marketing, and selling defective and unreasonably dangerous product and introducing it into the stream of commerce.

## COUNT II

### NEGLIGENCE AND NEGLIGENCE PER SE

31.  Plaintiff realleges and reasserts paragraphs 1-30 as if fully alleged herein.

32.  Defendant owed Plaintiff a duty of ordinary care in the importation, preparation, testing, packaging, marketing, distribution, and/or selling of the product. Further, Defendant owed Plaintiff the duty of warning or instructing Plaintiff of potentially hazardous or life-threatening conditions with respect to the product.

33.  Defendant breached their duties in one or more of at least the following ways:

   a.   Negligently importing, manufacturing, distributing, and/or marketing the product;

   b.   failing to properly test the product before placing it into the stream of commerce;

   c.   failing to adequately monitor the safety and sanitary conditions of its premises;

   d.   failing to apply its own policies and procedures to ensure the safety and sanitary conditions of its premises;

   e.   failing to adopt and/or follow FDA recommended good manufacturing practices;

   f.   failing to take reasonable measures to prevent the transmission of *lead* and related filth and adulteration from its premises;

   g.   failing to properly train and supervise its employees and agents to

prevent the transmission of *lead* and related filth and adulteration from its premises;

h.   failing to warn Plaintiff and the general public of the dangerous propensities of the product, particularly that it was contaminated with *lead*, despite knowing or having reason to know of such dangers; and

i.   failing to timely disclose post-sale information concerning the dangers associated with the product.

34.   Furthermore, Defendant had a duty to comply with all applicable health regulations, including the FDA's Good Manufacturing Practices Regulations, 21 C.F.R. part 110, subparts (A)-(G), and all statutory and regulatory provisions that applied to the manufacture, distribution, storage, and/or sale of the products or their ingredients, including but not limited to, the *Federal Food, Drug, and Cosmetics Act*, § 402(a), as codified at 21 U.S.C. § 342(a), which bans the manufacture, sale and distribution of any "adulterated" food, and the similar provision in the *Florida Food Safety Act,* including §§ 500.01. 500.04,  500.10, and 500.11, *et. seq*.

35.   Under both federal and applicable state law, food is adulterated if it contains a "poisonous or deleterious substance which may render it injurious to health."

36.   The product was adulterated because it contained *lead*. Thus, by the import, manufacture, distribution, delivery, storage, sale, and/or offering for sale of the product and/or the product's ingredients, Defendant breached their statutory and regulatory duties.

37.   Plaintiff was a member of the classes sought to be protected by the regulations and statutes identified above.

38.   Defendant's conduct was a direct, proximate, and producing cause of Plaintiff's

injuries and damages set forth in paragraphs 47-49 set forth below.

39.   All dangers associated with the product were reasonably foreseeable and/or scientifically discoverable by Defendant at the time Defendant placed the product into the stream of commerce.

## COUNT III

## BREACH OF IMPLIED WARRANTIES

40.   Plaintiff realleges and reasserts paragraphs 1-39 as if fully alleged herein.

41.   Defendants are merchants who manufacture, import, distribute, market, and/or serve food made with, the product.

42.   Plaintiff is a consumer.

43.   Defendant breached the implied warranty of merchantability by impliedly warranting that the product was of merchantable quality and fit for human consumption when it was not due to the presence of *lead*.   Plaintiff reasonably relied upon Defendant's skill and judgment as to whether the product was of merchantable quality and fit for human consumption.

44.   Defendant breached the implied warranty of fitness for a particular purpose by holding out unreasonably dangerous product (i.e. product containing *lead*) to the public as being safe when they knew or had reason to know that the product was not safe and that the public would consume the product.

45.   Defendant did not disclaim these implied warranties.

46.   Defendant's conduct was a direct, proximate, and producing cause of Plaintiff's injuries and damages set forth in paragraphs 47-49 below.

## DAMAGES

47.   Defendant's conduct was a direct, proximate, and producing cause of Plaintiff's

injuries and damages, including but not limited to damages in the past and future for the following: pain and suffering, mental anguish, physical impairment, physical disfigurement, loss of enjoyment of life, medical and pharmaceutical expenses, travel and travel-related expenses, emotional distress, lost wages, lost earning capacity, loss of consortium, attorneys' fees (to the extent recoverable) and other general, special, ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances.

48.   Plaintiff has suffered damages in excess of $50,000.

49.   WHEREFORE, Plaintiff prays for judgment against Defendant's s as follows:

   a.      Past and future economic and non-economic damages;

   b.      Court costs;

   c.      Pre- and post-judgment interest at the highest rate allowed by law; and

   d.      For such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial for all triable claims.

DATED November 21, 2023.

Respectfully submitted,

*/s/ Elizabeth Zwibel*
Elizabeth Zwibel, Esquire
Florida Bar Number: 193046
Teamliz@getgomez.com
Gomez Trial Attorneys
880 21st Avenue North
St. Petersburg, FL 33704
(727) 500-1076

**RON SIMON & ASSOCIATES**
Ron Simon (*pro hac vice* forthcoming)
Anthony C. Coveny (*pro hac vice* forthcoming)
820 Gessner, Suite 1455
Houston, Texas 77024
Phone: (713) 335-4900
Fax: (713) 335-4949
ron@rsaalaw.com
tony@rsaalaw.com

**Attorneys for Plaintiff**